UNITED STATES DISTRICT COURT

NORTHISN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DARYL DE KECZER, individually and on behalf of all others similarly situated<br>        Plaintiff,<br><br>v.<br><br>TETLEY USA, INC.,<br><br>        Defendant. | Case No.: 5:12-CV-02409-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[Re: Docket No. 54]** |

Presently before the Court is Defendant Tetley USA, Inc.'s Motion to Dismiss Plaintiff Daryl De Keczer's ("Plaintiff" or "De Keczer") Second Amended Complaint ("SAC"). Plaintiff filed this putative class action against Defendant alleging that several of Defendant's products have been improperly labeled so as to amount to misbranding and deception in violation of several California and federal laws.

Per Civ. L.R. 7-1(b), the motion was taken under submission without oral argument. Having fully reviewed the parties' papers, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss for the reasons explained below.

## I. Background

Plaintiff filed his first amended class action complaint on August 13, 2012. Dkt. No. 21. The Court issued an Order granting Defendant's Motion to Dismiss on August 16, 2013. Dkt. No. 47. Plaintiff then filed his SAC on September 3, 2013. Dkt. No. 48.

Plaintiff is a California consumer who purchased two of Defendant's bagged tea products: (1) British Blend Premium Black Tea, 80 bags, 7 oz, and (2) Green Tea, 40 bags, 2.8 oz. Dkt. No. 48 ¶ 3. Plaintiff brings a putative class action suit against Defendant on behalf of all persons in the United States who, since May 11, 2008 to the present, purchased the same or substantially similar food products ("nonpurchased Products") allegedly mislabeled. FAC ¶¶ 1-3. Plaintiff alleges the following causes of actions: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., (counts 1-3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., (counts 4-5);and violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., (count 6). Dkt. No. 48 ¶¶ 164-225.

## II. Legal Standard

### A. Rule 8(a)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual

2
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

### B. Rule 9(b)

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

### C. Rule 12(b)(1)

A party may file a motion to dismiss with the Court for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may be either facial or factual. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. Id. When a defendant makes a facial challenge, all

3
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. Wolfe, 392 F.3d at 362.

On a factual challenge, the party opposing the motion must produce affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Under a factual attack, the court need not presume the plaintiff's allegations are true. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); accord Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). In the absence of a full-fledged evidentiary hearing, however, disputed facts pertinent to subject matter jurisdiction are viewed in the light most favorable to the nonmoving party. Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

Federal courts are courts of limited jurisdiction, adjudicating only cases which the Constitution and Congress authorize. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). An Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. To satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992).

At least one named plaintiff must have suffered an injury in fact. See Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."

4
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996). If a court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### III. Discussion

Plaintiff contends that his case essentially has two distinct facets. First, Plaintiffs alleges that Defendants' packages and labels do not comply with certain sections of state and federal laws, thereby "misbranding" the product and making it legally worthless. Dkt. No. 48 ¶ 6. This misbranding gives rise to Plaintiff's first cause of action under the "unlawful" prong of the UCL. Second, Plaintiff claims that Defendants' labels are misleading, deceptive, unfair, and fraudulent. Id. ¶ 7. Plaintiff contends that they "reasonably relied in substantial part on the unlawful label statements, and were thereby deceived, in deciding to purchase these products." Id.

Defendant challenges Plaintiff's claims on a number of grounds including: lack of standing, the doctrine of primary jurisdiction requires dismissal, the claims are implausible, the claims are not pled with the required particularity, and federal preemption of state law claims.

#### A. Statutory Framework

The operative statute in this matter is the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343 et seq. 21 U.S.C. § 343 establishes the conditions under which food is considered "misbranded." Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular."

The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq., incorporates the requirements of the FDCA as the food labeling requirements of the state of California. Plaintiff brings claims for relief under the UCL, FAL, and CLRA based on Defendant's alleged violations of the Sherman Law. The UCL prohibits business practices that are unlawful, unfair, or fraudulent. The "fraudulent" prong of the UCL "requires a showing [that] members of the public are likely to be deceived." Wang v. Massey Chevrolet, 97 Cal. App. 4th 856, 871 (2002). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 837

5
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

(2006). As for the "unfair" prong, "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action." Morgan v. Wallaby Yogurt Co., Inc., No. 13-CV–00296-WHO, 2014 WL 1017879, at *11 (N.D. Cal. March 13, 2014); (citing Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 594 (2009)). Some courts have held that the "unfair" prong requires alleging a practice that "offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory provision." Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1263, 1266 (2006) (quotations omitted). Other courts have held that the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).

### B. Standing for Nonpurchased Products

As noted, to establish Article III standing, a plaintiff must allege facts showing an "injury-in-fact," causation, and redressability such that the injury will be likely redressed by a decision in the plaintiff's favor. Lujan, 504 U.S. at 561-62. An "injury in fact" requires showing "an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 560 (citations and internal quotation marks omitted).

The UCL and FAL incorporate the Article III standing requirements, but additionally require that the plaintiff plead an economic injury. Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322-23 (2011); see also TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 825 n.1 (9th Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury ... and 'immediate' causation . . . Neither is required for Article III standing." (internal citations omitted)). Proposition 64 was enacted in 2004 as a means of "confin[ing] [UCL] standing to those actually injured by a defendant's business practices and [ ] curtail[ing] the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." Kwikset, 51 Cal. 4th at 321 (internal citations omitted). Under the UCL and FAL, a plaintiff suffers an injury-in-fact when he

6

Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

or she has "(1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125 (N.D. Cal.2010).

To satisfy the injury-in-fact requirement for unfair competition claims, "courts in California require that plaintiffs demonstrate the purchase of products as a result of deceptive advertising." Id. To plead actual reliance, the "plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct." In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009). However, "the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." Id. A plaintiff can satisfy the UCL's standing requirement by alleging that he or she would not have bought the product but for the alleged misrepresentation. Kwikset, 51 Cal. 4th at 330.

The California Supreme Court has held that the phrase "as a result of" in UCL section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." In re Tobacco II, 46 Cal. 4th at 326. This also applies under the UCL's "unlawful" and "unfair" prong, where the predicate unlawfulness is misrepresentation and deception. Hale v. Sharp Healthcare, 183 Cal. App. 4th 1373, 1385 (2010); see also Kwikset, 51 Cal. 4th 310; In re Actimmune Mkt. Litig., No. 08-2376-MHP, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010), aff'd, 464 F. App'x 651 (9th Cir. 2011); Brazil v. Dole Foods Co., 935 F. Supp. 2d 947 (N.D. Cal. 2013); Kane v. Chobani, No. 12-CV-02425-LHK, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014).

The federal and state statutes relied on by Plaintiff prohibit a particular type of consumer deception, the mislabeling of food products. As such, the actual reliance requirement applies to Plaintiff's claims under all prongs of the UCL. See Figy v. Amy's Kitchen, No. 13-CV-03816-SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013); Kwikset, 51 Cal. 4th 310; Wilson v. Frito-Lay N. Am., 961 F. Supp. 2d 1134 (N.D. Cal. 2013)

The parties do not dispute whether Plaintiff has pled standing as to the purchased products. The question for the Court is whether Plaintiff has standing as to the nonpurchased products.

7
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1   Defendant argues that Plaintiff lacks standing to pursue claims based on products she did not
2   purchase because Plaintiff failed to explain how the 83 products with different labels and
3   ingredients, across different product lines, are "substantially similar" to the eight products she
4   bought. Defs.' Reply at 1. Plaintiff argues that she has standing because the 83 nonpurchased
5   products are substantially similar to and contain the same unlawful and misleading labeling claims
6   as the products Plaintiff did purchase. Pl.'s Opp'n at 4.

7   While courts are split as to whether actual purchase is required to establish the requisite
8   injury-in-fact, many courts in this district have found that claims regarding nonpurchased products
9   similar to Plaintiff's survive a motion to dismiss if the purchased products are substantially similar
10  to the nonpurchased products. See Khasin v. Hershey Co., 2012 WL 5471153, at *9 (N.D. Cal.
11  Nov. 9, 2012); Lanovaz v. Twinings, 2013 WL 2285221, at *3 (N.D. Cal. May 23, 2013) (the court
12  finding plaintiff has standing to sue for 51 nonpurchased products substantially similar to the 6 he
13  did purchase); Miller v. Ghirardelli Chocolate Co., 912 F. Supp. 2d 861, 871 (N.D. Cal. 2012) (The
14  court analyzed why the products that plaintiff did not buy were not substantially similar to those he
15  did buy); Astiana v. Dreyer's Grand Ice Cream, Inc., 2012 U.S. Dist. LEXIS 101371, at *33 (N.D.
16  Cal. July 20, 2012) (denying motion to dismiss claims asserted by plaintiffs to the extent they are
17  based on ice cream products that plaintiffs themselves did not purchase because plaintiffs alleged
18  sufficient similarity between the products they did purchase and those that they did not); Anderson
19  v. Jamba Juice, 2012 WL 3642835, at *4-5 (N.D. Cal. Aug. 25, 2012) (relying on Astiana for the
20  same proposition); Ogden v. Bumble Bee Foods, LLC, 2013 WL 1636032, *2 (N.D. Cal. Apr. 16,
21  2013) ("named plaintiffs must show only individual standing for their own claims and courts
22  should then determine whether they may represent similar but not identical injuries by putative
23  class members").

24  In this case, Plaintiff has successfully alleged substantial similarity among the purchased
25  products and the nonpurchased products, and Defendant concedes this issue by failing to challenge
26  Plaintiff's standing based on substantial similarity among the purchased and nonpurchased
27  products. Plaintiff successfully presented to the Court that all nine of the products (two purchased,

8

Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

seven non-purchased) are identical: all products share the same packaging, contain the same allegedly unlawful claims, and are derived from the same plant, camellia sinensis. See Reply at 4. As discussed above, courts in this district have consistently held a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the purchased products and nonpurchased products are substantially similar both in their physicality and in the alleged misrepresentations. In addition to the identical packaging and the tea being derived from the same plant, all products share the same allegedly unlawful claims in violation of federal and California law. Taken collectively, the Court finds Plaintiff have standing to assert claims relating to products he himself did not buy.

Accordingly, the Court DENIES Defendant's motion to dismiss for lack of standing.

### C. Preemption

Defendant argues that Plaintiff's causes of action predicated upon state law are preempted by the FDCA. Defendant contends that language in the federal law explicitly precludes Plaintiff, a private actor, from enforcing this federal law and the FDA regulations, and Plaintiff cannot use the Sherman Law as a way to sidestep preemption. Defendant further argues that implied preemption bars Plaintiff's claims because the claims are an attempt to enforce FDA regulations directly, and therefore prohibited by Section 337 of the FDCA. Section 337 only allows the United States to bring proceedings to enforce the FDCA. 21 U.S.C. § 337. Dkt. No. 64 at 10-11.

The Court disagrees with Defendant's. Plaintiff has not brought suit to enforce the federal statute; rather, Plaintiff's action is based on the Sherman Law, a parallel state law that mirrors the relevant sections of the FDCA and the NLEA. In such cases, courts have refused to find that preemption precludes the private, state-based causes of action. See Brazil, 935 F. Supp. 2d 947; Chacanaca, 752 F. Supp. 2d at 1118; Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 371 (N.D. Cal. 2010); see also Hughes v. Boston Scientific Corp., 631 F.3d 762 (5th Cir. 2011).

To bolster its argument, Defendant points to the Ninth Circuit's decision in Pom Wonderful LLC v. Coca-Cola Co., 679 F.3d 1170 (9th Cir. 2012), a suit brought under the federal Lanham Act alleging false and deceptive labeling. Id. Based on the particular facts of the case, the court held

9
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

that a plaintiff could not bring federal Lanham Act claims where doing so would require litigating whether the conduct in question violates the FDCA. Id. at 1176. Contrary to Defendant's contention, the Pom Wonderful court only held that the FDCA bars causes of actions brought under the federal Lanham Act where doing so would implicate the rules and regulations set forth under the FDCA and is therefore inapplicable to the case at hand. Id.; see also Bruton v. Gerber Products Co., 961 F. Supp. 2d 1062, 1080 (N.D. Cal. 2013); Brazil, 935 F. Supp. 2d 947; Delacruz v. Cytosport, Inc., No. C-11-3532-CW, 2012 WL 2563857, at *7 n.3 (N.D. Cal. June 28, 2012) ("[T]he Ninth Circuit did not rule on whether the FDCA expressly preempted Pom's state law claims under the UCL and FAL. . . . The Ninth Circuit's preemption ruling was limited to a finding that the FDCA preempted Pom's claims under the Lanham Act.")

Defendant further relies on the Ninth Circuit's decision in Perez v. Nidek Co., Ltd., 711 F.3d 1109 (9th Cir. 2013), however that decision is factually distinguishable from this case because it arose in the context of medical devices regulated by the FDCA and courts in this district have found that its reasoning does not apply to food labeling cases. Bruton, 961 F. Supp. 2d at 1082.

Finally, Defendant's reliance on Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 121 S. Ct. 1012, (2001) is misplaced and therefore does not persuade the Court. The Supreme Court's subsequent decision in Wyeth v. Levine, 555 U.S. 555 (2009), emphasized the narrowness of the holding in Buckman. In Wyeth, the Court held that state law product defect claims based upon inadequate drug warning labels were not preempted simply because the FDA regulated, and had approved, the drug warning label for the product in question. Id. at 581, 129 S.Ct. 1187. The Supreme Court confirmed that: "Congress enacted the FDCA to bolster consumer protection against harmful products [and] did not provide a federal remedy for consumers harmed by unsafe or ineffective drugs in the 1938 statute or in any subsequent amendment." Wyeth, 555 U.S. at 573-74. Thus, allowing state law claims to proceed, Congress declined the opportunity to adopt a more sweeping express preemption clause, as it did in the section 360k(a) of the Medical Device Amendments. Id. at 574–75, 129 S.Ct. 1187; Hendricks v. StarKist Co., 2014 WL 1244770, at *5-6 (N.D. Cal. Mar. 25, 2014).

10
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    Based upon this Supreme Court precedent, the Ninth Circuit has held that the FDCA "does
2    not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under
3    the [FDCA]." Stengel v. Medtronic, Inc., 704 F.3d 1224, 1228 (9th Cir. 2013) (en banc). However,
4    a state law claim must fit through a "'narrow gap' . . . to escape preemption by the FDCA: '[t]he
5    plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted
6    by § 360k(a)), but the plaintiff must not be suing because the conduct violates the FDCA (such a
7    claim would be impliedly preempted under Buckman ).'" Perez, 711 F.3d at 1120 (emphasis in
8    original) (finding claim for fraud on account of failure to disclose lack of FDA product approval
9    to be impliedly preempted). That is to say, state law claims are not impliedly preempted "insofar as
10   the state-law duty parallels a federal-law duty." Id. at 1118 (internal citations omitted). Courts in
11   this district have repeatedly extended this reasoning to claims based upon violations of FDA food
12   labeling and packaging regulations when there is a clear regulation or standard directly on point.
13   See, e.g., Hendricks, 12014 WL 1244770, at *5-6; Wilson, 2013 WL 1320468, at *7; Brazil, 935 F.
14   Supp. 2d at 956-59 (N.D .Cal. 2013); Ivie, 2013 WL 685372, at *8.

   The Court does not find that Plaintiff's claims are preempted, as Plaintiff brings his claims
under the Sherman Law, his claims do not impose any requirements in addition to the FDCA, and
Plaintiff is not suing on the basis that Defendant's conduct violates the FDCA.

### D. Primary Jurisdiction

The primary jurisdiction doctrine allows courts to "stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Ivie, 2013 WL 685372, at *5 (quoting Clark v. Time Warner Cable, 523 F. 3d 1110, 1114 (9th Cir. 2008)). Courts consider the following factors in deciding whether the doctrine of primary jurisdiction applies: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Ivie, 2013 WL 685372, at *5.

1    Where determination of a plaintiff's claim would require a court to decide an issue
2    committed to the FDA's expertise without a clear indication of how the FDA would view the issue,
3    courts of this district have found that dismissal or stay under the primary jurisdiction doctrine is
4    appropriate. See Hood v. Wholesoy & Co., Modesto Wholesoy Co. LLC, No. 12-CV-5550-YGR,
5    2013 WL 3553979, at *5-6 (N.D. Cal. July 12, 2013) (ECJ and soy yogurt claims dismissed
6    because the FDA's position is unsettled); Astiana v. Hain Celestial, 905 F. Supp. 2d 1013, 1016-17
7    (N.D. Cal. 2012) (holding that "[i]n absence of any FDA rules or regulations (or even informal
8    policy statements) . . . the court declines to make any independent determination of whether [the
9    label] was false or misleading" and the claims were barred under the primary jurisdiction doctrine).
10   In contrast, however, where FDA policy is clearly established with respect to what
11   constitutes an unlawful or misleading label, the primary jurisdiction doctrine is inapplicable
12   because there is little risk that the courts will undermine the FDA's expertise. See Brazil, 935 F.
13   Supp. 2d at 959 (where the FDA has established requirements applicable to the violations, there is
14   no risk of undercutting the FDA's judgment and authority, thus a stay is not necessary).
15   Defendant in this case argues that the Court should withhold action while the FDA
16   addresses the regulatory issues regarding the appropriate labeling of tea. MSJ at 17-18. The Court
17   is not persuaded. While this case does involve issues within the jurisdiction of the FDA, the Ninth
18   Circuit has made clear that only those claims raising issues of first impression or particular
19   complexity are appropriately dismissed or stayed based on primary jurisdiction. See Brown, 277
20   F.3d at 1172. Based on the information available at this stage, Defendant has failed to show the
21   Court that the issues in this case are novel or especially complex. Plaintiff's claims do not appear to
22   raise highly technical issues uniquely within the FDA's expertise. As with so many of the other
23   food misbranding cases within this district, Plaintiff's case is "far less about science than it is about
24   whether a label is misleading." Jones v. ConAgra Foods, Inc., 912 F. Supp. 2d 889, 898 (N.D.
25   Cal.2012); Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1124 (N.D. Cal.2010) (stating
26   that "plaintiffs advance a relatively straightforward claim: they assert that defendant has violated
27   FDA regulations and marketed a product that could mislead a reasonable consumer . . .. [T]his is a

12
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

question courts are well-equipped to handle."); see also Cytosport, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012) ("FDA's expertise . . . is not needed to determine whether the labels are misleading."). As such, the claims are not barred by the doctrine of primary jurisdiction.

Accordingly, the Court DENIES Defendant's Motion to Dismiss based on the doctrine of primary jurisdiction.

### E. Sufficiency of Claims

Plaintiff alleges two different facets of their argument against Defendant. First, Defendant's packages and labels render the products "misbranded" and therefore unlawful; second, Defendant's labels are "fraudulent" and "misleading." Plaintiff argues that the first facet of the case does not sound in fraud.

For all claims under the UCL that arise from deceptive advertising, as Plaintiff's claims here do, Plaintiff must plead reliance and show that "members of the public are likely to be deceived." Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008); Kwikset, 51 Cal. 4th 310. Whether a practice is "deceptive, fraudulent, or unfair" is generally a question of fact that is not appropriate for resolution on the pleadings. Williams, 552 F.3d at 938-39; Bruton, 961 F. Supp. 2d at 1089. Where there are food packaging features that could likely deceive a reasonable consumer, the Ninth Circuit has found that granting a motion to dismiss is inappropriate. Williams, 552 F.3d at 939.

However, where a court can conclude as a matter of law that alleged misrepresentations are not likely to deceive a reasonable consumer, courts have dismissed claims under the UCL, FAL, and CLRA. Jones, 912 F. Supp. 2d at 899; see Red v. Kraft Foods, Inc., No. 10-CV-1028-GW, 2012 WL 5504011, at *4 (C.D. Cal. Oct. 25, 2012) ("where . . . the claim alleges that a consumer will read a true statement on a package and then disregard 'well-known facts of life,'" the court granted a motion to dismiss because a reasonable consumer would not be deceived by pictures of vegetables and the true phrase "Made with Real Vegetables"); Carrea v. Dreyer's Grand Ice Cream, Inc., 475 Fed. App'x. 113 (9th Cir. 2012) (unpublished Ninth Circuit case determined that

13
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

a reasonable consumer would not think the terms "original" or "classic" indicate a wholesome or nutritious product).

### i. "Unlawful" Claims

As discussed above, under the "unlawful" prong of the UCL, Plaintiff must plead reliance when claims are premised on allegedly deceptive advertising. See Kwikset, 51 Cal. 4th 310; Chobani, No. 12-CV-02425-LHK, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014); Brazil, 2013 WL 5312418, at *8-9. Defendant argues that Plaintiff cannot avoid the UCL's pleading requirement under the "unlawful" prong.

Plaintiff argues that his claims are not based on misrepresentation, but rather on the illegality of the products themselves as their misbranding violates the Sherman Law. Therefore, Plaintiff contends there is no need for him to prove reliance. Plaintiff relies on Medrazo v. Honda of N. Hollywood, 205 Cal. App. 4th 1 (2012), and Steroid Hormone Product Cases, 181 Cal. App. 4th 145 (2010), for the proposition that no showing of reliance is required where a defendant sells a product that is illegal to sell. However, as discussed in Chobani, 2014 WL 657300, at *7, these cases are unavailing because Steroid Hormone was decided prior to the California Supreme Court's decision in Kwikset and the alleged unlawful conduct in that case was not based on a statute prohibiting specific types of misrepresentations. Similarly, Medrazo does not discuss Kwikset's finding that actual reliance applies to claims under the unlawful prong of the UCL. Plaintiff cannot circumvent the reliance requirement by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance. As this district pointed out in Brazil, if the court held that a plaintiff "has standing to bring claims based solely upon allegations that he would not have purchased a product that was misbranded, purchasers who never 'viewed the defendant's advertising' or misleading labeling would have standing to sue. Such a holding is inconsistent with Proposition 64 and Kwikset." Brazil, 2013 WL 5312418, at *9. Therefore, actual reliance must be pled in order to satisfy the requirements of the UCL.

Accordingly, Plaintiff's first cause of action is DISMISSED without prejudice.

14
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

### ii. "Fraudulent" Claims

Applying the Rule 9 pleading standard, the Court finds that the SAC does provide a clear and particular account of the allegedly fraudulent, deceptive, misrepresentative, or otherwise unlawful statements made on the labels of the purchased products. Plaintiff stated in his pleadings that the references to antioxidants on Defendant's product labels were a factor in his decision to purchase. SAC ¶¶ 113, 118, 125, 143, 198. The Court is unpersuaded by Defendant's argument that Plaintiff "cannot plausibly claim he was misled by the technical violation of a regulation." It would be improper to dismiss the antioxidant claims at this point in the proceedings because, contrary to Defendant's assertions, the Court is not in a position to conclude as a matter of law that a reasonable customer would not be deceived by the antioxidant claims. Jones, 912 F. Supp. 2d at 901; Ivie, 2013 WL 685372, at *12.

The Court does however strike all references to sections of the website Plaintiff alleges is "part of the label." Although Plaintiff in his SAC states "[a]ny unlawful health claim made on Tetley's website is attributed to the product label," the Court finds that Plaintiff has not alleged sufficient facts to support this claim. Only if the plaintiff establishes that the label contains a specific statement referring the consumer to a specific website for information about the claim in question can the website be considered to be "accompanying" the article as "labeling." See Wilson, 961 F. Supp. 2d, at *14 (holding that even though the product label referred the plaintiffs to the defendant's website, the label did not direct the reader to visit the website for further nutritional information, and so the website did not constitute "labeling"); see also Samet v. Procter & Gamble Co., 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013).

**IV.	Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss will be GRANTED in part and DENIED in part.

If Plaintiff wishes to further amend the complaint, the Court orders that it be pled in compliance with the pleading standards of Rules 8 and 9 and filed within 15 days of the date of this order.

**IT IS SO ORDERED**

Dated: August 28, 2014



EDWARD J. DAVILA
United States District Judge

16
Case No.: 5:12-CV-02409-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS